# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Sears Logistics Services, Inc.

    Plaintiff,

v.

Phoenix Warehouse,

    Defendant.

Case No. 2:14-cv-999

Judge Watson

Magistrate Judge Kemp

## PHOENIX WAREHOUSE'S MOTION FOR SUMMARY JUDGMENT.

Now comes Phoenix Warehouse ("Phoenix"), and hereby respectfully moves this Court to enter summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. This motion is made on the grounds that there are no genuine issues of material fact and Phoenix is entitled to judgment as a matter of law. The reasons for this motion are more fully set forth in the accompanying memorandum in support and the deposition and attached exhibits thereto that have been incorporated herein by reference.

    Respectfully submitted,

    /s/ *Ed Hubbard*
    Edward G. Hubbard    (0067784)
    **LANE ALTON**
    Two Miranova Place, Ste. 220
    Columbus, Ohio 43215-7052
    614-228-6885; 614-228-0146 fax
    ehubbard@lanealton.com
    *Trial Counsel for Defendant*

## I. INTRODUCTION

Plaintiff Sears Logistics Services, Inc. ("Sears") and/or Innovel, purported to be the new name for Sears, alleges that it overpaid rent to Defendant Phoenix Warehouse ("Phoenix") because "for reasons unknown" it paid more rent than called for by a lease amendment over a period of six years, e.g. $3.35 a square foot instead of $3.00. But these voluntary payments, if a mistake, are a mistake of law, not fact. Under Ohio law, Sears is not entitled to recover such payments.

## II. FACTUAL BACKGROUND

In June of 2007 the parties agreed to amend their lease to expand the length of a third option term scheduled to begin in June of 2008 and reduce the rental rate. Beginning in June of 2008, Sears began to pay the original rate of $3.35 a square foot for the third term set in the original lease instead of the $3.00 rate called for in the amendment. Sears alleged that for "reasons unknown, the payment system never was updated to reflect the new rate as agreed to in the Amendment to the Lease." Complaint at ¶12. This is careful, concise language that omits much and can be read to suggest that Sears simply failed to update its payment system after the amendment was agreed to. This is not what happened.

Instead, in September 2007, several months after executing the lease amendment (but well before the beginning of the 2008 term addressed by the amendment), Beth Turner, a property administrator, was tasked with updating the Facilities Information and Planning System or "FIPS." In doing so, she had the lease amendment between Phoenix and Sears before her in creating a lease abstract. A

lease abstract is a document created by a property administrator that incorporates the terms of a new lease or an amendment to an existing lease. *See generally* Catanese Dep. at p. 18. As testified to by Sears' 30(b)(6) witness:

```
Q. In 2007 when the property administrator
would make a notation on a least [sic] abstract, what
was the source document that they would be relying
on for the information as to how to modify the
abstract? Was it the amendment itself?

A.  Yes, the original document.

Q.   So I'm sure you've noted in your review
of the file for this case that there was an
amendment entered between Phoenix Warehouse and
Sears Logistic Services, Inc. on June 5th, 2007,
correct?

A.    Correct.

Q.    And this amendment would be the
document that would be put in front of the
property administrator for them to use to markup
the FIPS abstract, correct?

A.    Correct.
```

Catanese Dep. at 20-21, filed as Doc. #32.

Thus Ms. Turner had the subject lease amendment before her when she prepared the lease abstract. That lease amendment contained both the new term and the new rate.[1] Ms. Turner's lease abstract, attached as Exhibit B to her deposition, however, indicated that it was for a Lease Extension and Change Term (p. 1) and failed to properly interpret the lease amendment such that there was no entry of the new rate on the lease abstract.[2] The lease abstract is first marked up by hand by the property administrator. A lease administrator then updates the lease abstract and prints out a

---

[1] The lease amendment is attached as Ex. B to plaintiff's complaint.
[2] Turner apparently prepared an earlier version of the lease abstract with handwritten notation of the amended rate and term, but for reasons that Sears cannot explain, this was never entered into Sear's FIPs system which issues payments.

3

copy for review by the property administrator. Catanese Dep. at p. 30, lines 8-21. After review, the lease abstract prepared by Ms. Turner underwent authorization, reauthorization, and execution, and was then entered by a lease administrator into FIPS. See, e.g. Ex. B of Catanese Dep, specifically the approval stamp found at p. 1. Ms. Catanese also testified that as a policy there was quality assurance in place to ensure that all of the terms from the original lease or amendment were properly captured. Dep. at p. 22. In June of 2008, Sears began to pay $3.35 a square foot in June consistent with the mistake of law made by Ms. Turner in interpreting the rent obligation under the lease amendment, a mistake that was authorized, reauthorized, and executed.

With respect to the years following 2007, this court found, in its decision in Doc. #18 that "it can be reasonably inferred that between 2008 and 2014, Sears mistakenly believed that its electronic payment system was making payments to Phoenix at the correct rental rate. Ohio courts have found this type of mistake to be a mistake of fact." This determination by the court was made based upon the pleadings. Discovery, however, has established that Sears had no basis for its belief as Ms. Catanese was asked:

```
Q. At any time between 2007 and 2014, did
Sears or one of its accountants or any other party
do some sort of quality control, quality assurance
to ensure that the information as put into the
system actually matches up with the terms of the
leases entered into between Sears and its
landlords?

A. I don't believe so, no.
```

Sears payment at $3.35 is evidence that it believed it was paying at the correct rate as *Consolidated Mgmt. v. Handee Marts,*[3] stands for the proposition that "[w]here a dispute arises relating to an agreement under which the parties have been operating . . ., the conduct of the parties may be examined in order to determine the construction which they themselves have placed on the contract."

## III. LAW AND ARGUMENT

**Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.

The United States Supreme Court in *Celotex v. Catrett*, 477 U.S. 317 (1986) held that a motion for summary judgment forces the non-moving party to produce evidence on any issue for which the party bears the burden of production at trial.

**A. The existence of the lease contract precludes a claim for unjust enrichment, an equitable claim, and the only claim made by Sears.**

Phoenix previously asserted this argument at greater length in its Motion to Dismiss (Doc. # 4). The Court in Doc. # 18 rejected that argument. While respecting the Court's decision, to avoid any claim of waiver, Phoenix incorporates it by reference within this motion and asserts that it is entitled to summary judgment on this basis.

---

[3] 109 Ohio App. 3d 185, 191(Ohio Ct. App., Cuyahoga County 1996), citing *National City Bank v. Citizens Blding. Co.* (App. 1947) 48 Ohio L. Abs. 325, 74 N.E.2d 273.

**B.   There is no restitution in the event of a voluntary payment made as the result of a mistake of law.**

Ohio recognizes the voluntary payment doctrine. *Salling v. Budget Rent-A-Car Systems, Inc.*[4], *Nationwide Life Ins. Co. v. Myers*.[5]  Simply stated, a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution. *Scott v. Fairbanks Capital Corp.*[6]  As stated in *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*,[7] "[w]hen a party with knowledge of the facts, but without legal liability to do so, pays money voluntarily, that person has no claim to recovery for the monies so paid."  "A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back." *Nationwide Life Ins. Co. v. Myers*. [8]  "[P]ayment made by reason of wrong construction of terms of contract is made under mistake of law." *Sheet Metal Workers Local 98 v. Whitehurst*, 2004-Ohio-191, ¶ 33 (5th Dist.) citing 69 Ohio Jurisprudence 3d (1986) 13-14, Mistake, Section 9.

As stated by this Court at p. 5 of Doc. # 18, "voluntary payment made as a result of a mistake of fact may be recoverable, but voluntary payment made as a mistake of law is not."

---

[4] 672 F.3d 442, 444 (6th Cir. 2012).
[5] 425 N.E. 2d 952, 955 (Ohio Ct. App. 1980).
[6] 284 F. Supp. 2d 880(S.D. Ohio 2003), citing *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001).
[7] 2013 U.S. Dist. LEXIS 55628 (S.D. Ohio Apr. 18, 2013) citing *Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.*, No. 96APE11-1501, 1997 Ohio App. LEXIS 2854, 1997 WL 358857, *7 (Ohio Ct. App. 1997) (citing *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 147 Ohio St. 79, 67 N.E.2d 906, 911 (Ohio 1946)).
[8] 67 Ohio App. 2d 98, 103 (Ohio Ct. App., Summit County 1980), citing *Cincinnati v. Gas Light & Coke Co.* (1895), 53 Ohio St. 278, paragraph three of the syllabus.

**C.    Sears had full knowledge of the facts and did not make a mistake of fact.**

The general rule is that money paid under the mistaken supposition of the existence of a specific fact *** may be recovered as a mistake of fact. *Firestone Tire & Rubber Co. v. Central Nat. Bank of Cleveland*.[9] As a result, Sears specifically alleged that its payment was "based on a mistake of fact" at ¶18 of its complaint to escape the consequences of making a mistake of law. Its mere assertion is not sufficient, *see, e.g., Cook v. Home Depot U.S.A., Inc.*,[10] (applying voluntary payment doctrine in motion to dismiss, finding that the plaintiff's voluntary payment of charges was not caused by a mistake of fact, despite the plaintiff's assertion).

The only evidence in this case is that property analyst Beth Turner had full knowledge of the facts – i.e. the term and rent provisions of the lease amendment - before her when she created the lease abstract, yet made a mistake of law in misinterpreting the lease amendment in September 2007 with respect to the rent to be paid. This may have been a mistake, but it is not a mistake of fact. It is a mistake of law in that Ms. Turner, on behalf of Sears, failed to properly interpret the applicable lease amendment in preparing the lease abstract, an abstract that was reviewed, authorized, reauthorized, and executed. Sears thereafter paid at a rate of $3.35 because of this mistake of law.

In *Consolidated Mgmt. v. Handee Marts,*[11] Handee Marts asserted a counterclaim, alleging it had overpaid its rent between 1984 and 1993 under the terms of the lease. The court held that Handee Marts' miscalculation of its rent obligation was

---

[9] 159 Ohio St. 423, 50 Ohio Op. 364, 112 N.E.2d 636 (1953).
[10] No. 2:06-cv-571, 2007 U.S. Dist. LEXIS 15679, 2007 WL 710220 (S.D. Ohio Mar. 6, 2007) (Smith, J.)
[11] 109 Ohio App. 3d 185, 187(Ohio Ct. App., Cuyahoga County 1996).

7

a mistake of law, rather than a mistake of fact.[12] In reaching this conclusion, the court relied upon 73 *Ohio Jurisprudence* 3d 74's formulation of the relevant doctrines: "[m]oney voluntarily paid on a claim of right with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party, at the time of payment, was ignorant of, or mistook, the law as to his liability. Also, a payment made by reason of erroneous construction of the terms of a contract *** is not made under a mistake of fact but under a mistake of law, and if voluntarily made cannot be recovered back."

Having the original lease amendment in front of Ms. Turner charges Sears with full knowledge of the facts. In contrast, *Arlington Video Prods. v. Fifth Third Bancorp*, 569 F.App'x 379, 389 (6th Cir.2014), provides guidance as to what would not constitute full knowledge, *e.g.* "[t]he evidence shows that Arlington did not voluntarily pay the Bank the fees with full knowledge of the facts. The Bank did not disclose to Arlington all of the facts relating to the deposit adjustment fee or the increase in the returned item fee before automatically withdrawing those fees from Arlington's account and listing unexplained "service charges" on the monthly bank statements."

Ms. Catanese was asked at p. 11 of her deposition:

```
Q. Did you reach any understanding as to
what had occurred?

A. Not really.  Other than a human mistake
was made.
```

A human mistake of law. Ms. Turner's job was to do nothing other than interpret leases and lease amendments on behalf of Sears. In doing so in this case she had the

---

[12] *Id.* at 109 Ohio App. 3d 185, 190.

subject lease amendment before her and thus had full knowledge of the facts.  Sears, by signing the amendment is likewise charged with the knowledge of its contents.  As a result, when Ms. Turner interpreted it via the creation of a lease abstract, she made a mistake of law, not fact, in interpreting Sears' obligation under the amendment to pay $3.35 a square foot in rent, a mistake of law that was authorized, reauthorized, and executed in the FIPS system.

**IV.    CONCLUSION**.

For the reasons set forth above, Phoenix Warehouse respectfully requests that the court grant it summary judgment as the lease between the parties precludes plaintiff's equitable claim and plaintiff's mistake of law in interpreting the lease amendment precludes its claims for repayment of the monies it paid as a result of that mistake of law.

Respectfully submitted,

/s/ *Ed Hubbard*
Edward G. Hubbard        (0067784)
**LANE ALTON**
Two Miranova Place, Ste. 220
Columbus, Ohio 43215-7052
614-228-6885; 614-228-0146 fax
ehubbard@lanealton.com
***Trial Counsel for Defendant***

## **CERTIFICATE OF SERVICE**

I hereby certify a copy of the foregoing was duly served via email on this 25nd day of September, 2015, upon the following:

Charles E. Tichnor, III
Gregory P. Mathews
**DINSMORE & SHOHL, LLP**
191 W. Nationwide Blvd., Ste. 300
Columbus, Ohio 43215
***Attorneys for Plaintiff***

/s/ *Ed Hubbard*
_____
Edward G. Hubbard      (0067784)