UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sears Logistics Services, Inc.,

    Plaintiff,

v.

Phoenix Warehouse,

    Defendant.

Case No. 2:14-cv-999

Judge Watson

Magistrate Judge Kemp

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO PHOENIX WAREHOUSE'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Phoenix Warehouse has failed to prove that the voluntary-payment doctrine[1] applies under the undisputed facts in this case.[2] The voluntary-payment doctrine can apply here only if Phoenix Warehouse proves that (1) Sears Logistics made the overpayments due to a mistake of law, (2) Phoenix Warehouse claimed the right to the overpayments, and (3) Sears Logistics had full knowledge of the facts. Phoenix Warehouse's Motion for Summary Judgment fails to demonstrate the first and third elements, and it completely ignores the second element. Therefore, under the undisputed evidence, the Court must deny Phoenix Warehouse's Motion for Summary Judgment.

---

[1] Phoenix Warehouse carries the burden of proof on its voluntary-payment defense, which it asserted as an affirmative defense. *See* Answer of Defendant Phoenix Warehouse (Doc. 20) at ¶ 41.

[2] In support of its Motion for Summary Judgment, Phoenix Warehouse refers to Sears Logistics' complaint, arguing that *allegations* alone are not sufficient to support Sears Logistics' claims. *See* Phoenix Warehouse's Motion for Summary Judgment at 2, 7. This argument disregards the *evidence* Sears Logistics submitted with its own Motion for Summary Judgment (Doc. 34). To minimize the number of pages of briefing for this Court to review, Sears Logistics will not repeat all the facts and evidence in this Memorandum. Sears Logistics incorporates its own Motion for Summary Judgment, along with the evidence filed in support of its Motion.

## ARGUMENT

**1. Phoenix Warehouse provides an incomplete statement of the law, disregarding that it must have claimed a right to the overpayments.**

Phoenix Warehouse argues that the voluntary-payment doctrine automatically applies whenever overpayments are made under a mistake of law. Although the doctrine certainly involves the mistake-of-law/mistake-of-fact question, its application is not so simple. In fact, under Ohio law, for the doctrine to apply, the payee must have made a "claim of right" to the payments at issue. *See* Opinion and Order, Doc. 18, filed 5/4/2015, p. 5. *See also Arlington Video Prod., Inc. v. Fifth Third Bancorp*, 569 Fed. Appx. 379, 389 (6th Cir. 2014); *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012); *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-812, 2013 U.S. Dist. LEXIS 55628, *10 (S.D. Ohio Apr. 18, 2013); *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003).

There is no dispute that Phoenix Warehouse never made a "claim of right" to the overpayments. (Enneking Dep. at 31, 41-42; Phoenix Warehouse's Answers to Sears Logistics' Second Set of Interrogatories, Nos. 1 & 2.)[3] Sears Logistics did not pay an extra $22,108.33 per month because Phoenix Warehouse demanded it, and Phoenix Warehouse never has claimed that the Amendment to Lease required monthly payments of $211,608.33 from June 2008 through May 2014. Regardless of what the Court decides concerning the mistake-of-law/mistake-of-fact issue, Phoenix Warehouse's voluntary-payment defense fails because Phoenix Warehouse never claimed that Sears Logistics owed the money at issue.

---

[3] Phoenix Warehouse's Answers to Sears Logistics' Second Set of Interrogatories were Exhibit 3 to Sears Logistics' Motion for Summary Judgment (Doc. 34).

## 2. Phoenix Warehouse failed to prove that Sears Logistics made a mistake of law or "interpreted" the Amendment to Lease.

As explained in Sears Logistics' Motion for Summary Judgment, Sears Logistics overpaid rent for six years because it failed to update the new rental amount in FIPS, the electronic-payment system it uses to automatically process payments.[4] Sears Logistics had procedures in place in 2007 so that FIPS would be updated when lease changes were made, but the evidence shows that the process failed here when a Property Administrator, Beth Turner, failed to include the rent reduction in a lease abstract. (Catanese Aff. at ¶ 11, 12 & Ex. D[5]; Catanese Dep. at 14-15, 29-31.) The evidence shows that Ms. Turner failed to give her first lease abstract—which she had prepared correctly—to the Lease Administrator, Angela Lipovetsky. (Catanese Aff. at ¶ 9, 10 & Ex. C; Catanese Dep. at 45-47.) Ms. Turner inexplicably prepared a second lease abstract several weeks later but failed to account for the rent reduction. (Catanese Aff. at ¶ 11 & Ex. D.)[6] Ms. Lipovetsky, therefore, had no knowledge of the rent reduction when she inputted data into FIPS. (*See* Catanese Aff. at ¶ 10, 12; Catanese Dep. at 14-15, 29-32, 46-47.) So, although employees went through the procedural steps in place at the time, due to Ms. Turner's failure to note the rent reduction, FIPS never was updated to reflect the new rate. For six years, Sears Logistics mistakenly believed that FIPS was making the correct payments.

Phoenix Warehouse attempts to characterize Sears Logistics' error as a "mistake of law" by arguing that Ms. Turner "interpreted" the rent obligation when she prepared her second lease abstract. Phoenix Warehouse argues that Ms. Turner "interpreted" the Amendment to Lease

---

[4] *See* Plaintiff's Motion for Summary Judgment at 3-5.
[5] The Catanese Affidavit is Exhibit 1 to Sears Logistics' Motion for Summary Judgment (Doc. 34).
[6] Phoenix Warehouse omits reference to the first lease abstract (created in July 2007) and incorrectly states that the second lease abstract (created in September 2007) is Exhibit B to *Beth Turner*'s deposition. *See* Phoenix Warehouse's Motion for Summary Judgment at 3. In fact, Phoenix Warehouse never deposed Ms. Turner, and Exhibit B to the deposition of JoAnn Catanese is only a partial copy of the September 2007 lease abstract. (Catanese Dep. at 35.) A complete copy of the September 2007 lease abstract is Exhibit D to the Affidavit of JoAnn Catanese.

because a mistake of law must involve an interpretation or construction of contract terms. *See* Opinion and Order, Doc. 18, filed 5/4/2015, a p. 6; *Sheet Metal Workers Local 98 v. Whitehurst*, 5th Dist. Knox No. 03 CA 29, 2004-Ohio-191, 2004 Ohio App. LEXIS 173, ¶ 33; *Salling*, 672 F.3d at 445; *Fairbanks Capital*, 284 F.Supp.2d at 894; *Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 103, 425 N.E.2d 952 (Ohio App. 1980). But Phoenix Warehouse fails to prove that Ms. Turner's error resulted from a mistaken "interpretation" of the Amendment to Lease.

Contrary to Phoenix Warehouse's argument, this case is not factually analogous to *Consol. Mgmt. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 189, 671 N.E.2d 1304 (Ohio App. 1996). As Phoenix Warehouse points out, *Handee Marts* involved the payor's "miscalculation" of its obligation.[7] In contrast here, it is undisputed that the Amendment to Lease did not require the parties to perform any calculation to determine the correct rental amount. (Enneking Dep. at 28) A *misinterpretation* cannot reasonably be inferred under the undisputed facts because there is no dispute that the Amendment to Lease was not subject to differing interpretations. Rather, to understand the legal import of the Amendment to Lease, one is required simply to read it:

> Q. And what was your understanding regarding the rent obligation changes that are created through the amendment to lease?
>
> MR. HUBBARD: Same objection.
>
> A. I mean, it says the rent is 189,500.
>
> * * *
>
> Q. And similarly, I want to direct your attention to the final sentence of Paragraph 2 -- of the second paragraph of Section 2, which is on the second page. This sentence reads: "The rent for the third extension term shall be at $3 per square foot or One Hundred Eighty Nine Thousand Five Hundred (189,500.00) per month."
>
> Did I read that correctly?

---

[7] Phoenix Warehouse's Motion for Summary Judgment at 7.

A. Yes.

Q. And do you think this sentence is clear?

MR. HUBBARD: Objection.

A. Yes.

Q. Is there any other way to interpret this sentence besides that the rent shall be $3 per square foot and that Sear's [sic] obligation shall be $189,500 per month?

MR. HUBBARD: Objection.

A. No.

Q. Does it require the parties to Sear's [sic] or Phoenix Warehouse to perform any calculations to determine what amount is owed?

A. No.

Q. And do you agree that Sear's mistakenly paid more than $189,500 per month for most of the third option period?

MR. HUBBARD: Objection.

A. Yes.

(Enneking Dep. at 27, 28-29.)

Beth Turner did not misinterpret the Amendment to Lease; she failed to read it fully and carefully. This error has the characteristics of a mistake of fact because it is akin to other human errors, such as clerical errors and poor internal communication. This Court already has recognized that "Ohio courts have found this type of mistake to be a mistake of fact." Opinion and Order, Doc. 18, filed 5/4/2015, at p. 7 (citing *Sheet Metal Workers*, 2004-Ohio-191, 2004 Ohio App. LEXIS 173, at ¶ 34-35; *Case W. Reserve Univ. v. Friedman*, 33 Ohio App.3d 347, 348, 515 N.E.2d 1004 (Ohio App. 1986)).

The facts here are similar to those in *Bank One Trust Co., N.A. v. LaCour*, 131 Ohio App.3d 48, 721 N.E.2d 491 (Ohio App. 1999), where the court awarded restitution to the payor

5

when the overpayment resulted from "poor internal communication" between two departments. *Id*. at 52-53. In *LaCour*, the interest of Bank One's payee was assigned to the IRS, and "Bank One's legal department was aware of the assignment to the IRS and a signatory to it." *Id*. at 51. Bank One erroneously paid the original payee, even though there was no question that the assignment required Bank One to pay funds to the IRS. *See id*. The error occurred because the assignment was not communicated to or read by the appropriate individuals within the bank. *See id*. at 52. Similarly here, the problem was not one of interpretation but of carelessness and lack of communication. Sears Logistics may recover the overpayments under these facts. *See Firestone Tire & Rubber Co. v. Cent. Nat'l Bank of Cleveland*, 159 Ohio St. 423, 439, 112 N.E.2d 636 (1953) (holding that a payor may recover "even if negligent in making payment under a mistake of fact"); *Cent. Nat'l Bank of Cleveland v. Int'l Sales Co.*, 87 Ohio App. 207, 218-219, 91 N.E.2d 532 (Ohio App. 1950) (quoting Restatement of Law of Restitution, Section 59) ("A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care.").

Phoenix Warehouse tries to bolster its position by arguing that the second lease abstract "was authorized, reauthorized, and executed."[8] Phoenix Warehouse incorrectly suggests that multiple individuals within Sears actually reviewed the Amendment to Lease and consciously set an improper rental amount. In truth, however, in 2007 only one person—in this case Beth Turner—was responsible for confirming that a lease abstract was accurate. (Catanese Dep. at 53.) The presence of a stamp on the abstract reflecting that certain steps were authorized, reauthorized, and executed by other employees shows only that procedures were followed. (Catanese Dep. at 29-35.) Unfortunately, the process, however well designed, was susceptible to human error. And it was human error that led to the overpayments here. (*See id*. at 11.)

---

[8] Phoenix Warehouse's Motion for Summary Judgment at 4, 7, 9.

Phoenix Warehouse also refers to the testimony of JoAnn Catanese to show that no audit was performed between 2007 and 2014.[9] The lack of an audit concerning this particular Amendment to Lease does not undermine Sears Logistics' reliance on FIPS. In fact, it reinforces that Sears Logistics relied on the system and shows only that Sears Logistics did not discover its mistake until 2014. This fact is both immaterial and undisputed.

The Court already has held that reliance on a payment system is a mistake of fact. Opinion and Order, Doc. 18, filed 5/4/2015, p. 7. Phoenix Warehouse cannot refute that Sears Logistics had a system in place and made payments relying on the data inputted into that system. Based on the clear language of the Amendment to Lease, it cannot be reasonably inferred that Beth Turner "misinterpreted" the Amendment to Lease. The only reasonable interference is that she did not carefully read it. The undisputed facts show that Sears Logistics mistakenly believed that FIPS was making payments to Phoenix Warehouse at the correct rental rate from June 2008 through May 2014.

### 3. Phoenix Warehouse failed to prove that Sears Logistics had full knowledge of the facts when it made the overpayments.

To prevail on its voluntary-payment defense, Phoenix Warehouse must show that Sears Logistics made the overpayments "with full knowledge of the facts." *Arlington Video*, 569 Fed. Appx. at 389 (quoting *Fairbanks Capital*, 284 F. Supp. 2d at 894). Phoenix Warehouse argues that Sears Logistics had full knowledge of the facts simply because Beth Turner had access to the Amendment to Lease when she prepared the incorrect lease abstract. This fact, standing alone, is not enough to satisfy the third element of Phoenix Warehouse's voluntary-payment defense.

Due to the nature of Ms. Turner's error, this is not a case where all the relevant facts "were known and considered" by Sears Logistics each of the seventy-two times it overpaid rent.

---

[9] Phoenix Warehouse's Motion for Summary Judgment at 4.

*See Nationwide*, 67 Ohio App.2d at 103, 425 N.E.2d 952. Sears Logistics made each payment in reliance on the information inputted into FIPS. (Catanese Aff. at ¶ 5.) The undisputed facts show that Sears Logistics, because it was relying on the erroneous lease abstract and not the Amendment to Lease itself, did not have full knowledge of the facts when it made each overpayment. Sears Logistics, therefore, did not make each payment with a conscious awareness of the terms of the Amendment to Lease.

## CONCLUSION

The voluntary-payment doctrine cannot apply under the undisputed facts. Sears Logistics mistakenly overpaid rent because an employee failed to properly read the Amendment to Lease and prepare a correct lease abstract. Phoenix Warehouse has known all along that Sears Logistics was overpaying in error and never has claimed a legal right to the funds. Because these facts do not permit application of the voluntary-payment doctrine, the Court must deny Phoenix Warehouse's Motion for Summary Judgment.

Respectfully submitted,

*s/ Gregory P. Mathews*
Charles E. Ticknor, III (0042559)
Gregory P. Mathews (0078276)
DINSMORE & SHOHL, LLP
191 W. Nationwide Boulevard, Suite 300
Columbus, Ohio 43215
Phone: (614) 628-6880
Fax: (614) 628-6890
charles.ticknor@dinsmore.com
gregory.mathews@dinsmore.com
*Attorneys for Plaintiff Sears Logistics Services, Inc. (n/k/a Innovel Solutions, Inc.)*

**CERTIFICATE OF SERVICE**

    I certify that on October 16, 2015, I electronically filed the foregoing Memorandum in Opposition to Phoenix Warehouse's Motion for Summary Judgment with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to:

Edward G. Hubbard
Lane, Alton & Horst LLC
ehubbard@lanealton.com
*Attorney for Defendant Phoenix Warehouse*

                              *s/ Gregory P. Mathews*
                              An Attorney for Plaintiff