**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Sears Logistics Services, Inc.

    Plaintiff,

v.

Phoenix Warehouse,

    Defendant.

Case No. 2:14-cv-999

Judge Watson

Magistrate Judge Kemp

## PHOENIX WAREHOUSE'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC # 34).

Now comes Phoenix Warehouse ("Phoenix"), and hereby respectfully submits its opposition to Sear Logistics Services, Inc.'s[1] ("Sears") motion for summary judgment. The bases for this motion are set forth in the accompanying memorandum in support and the depositions and attached exhibits thereto that have been incorporated herein by reference.

Respectfully submitted,

/s/ *Ed Hubbard*

Edward G. Hubbard    (0067784)
**LANE ALTON**
Two Miranova Place, Ste. 220
Columbus, Ohio 43215-7052
614-228-6885; 614-228-0146 fax
ehubbard@lanealton.com
*Trial Counsel for Defendant*

---

[1] There is a pending motion to amend to name Innovel Solutions, Inc. as a party in the stead of Sears.

**I.     INTRODUCTION**

Sears argues that it is entitled to summary judgment because Phoenix did not "give consideration for the overpayments, the overpayments resulted from a factual mistake, and Phoenix Warehouse has no legal or equitable claim to the funds." Doc # 34 at p. 8.  Sears, in its conclusion, also seeks the award of prejudgment interest but fails to identify any factual or legal basis for this request, which should be denied as a matter of procedure as well as on the merits.

Sears is not entitled to summary judgment as it has failed to meet its burden under Civ. R. 56.  To the contrary, Phoenix established that it is entitled to summary judgment for the reasons set forth in Phoenix's Doc # 35.  In the event that the court were to determine that Phoenix is not entitled to summary judgment, the facts and arguments set forth within its motion for summary judgment and here establish, at a minimum, a dispute of material fact that precludes the award of summary judgment to Sears as to whether it made a mistake of fact or mistake of law and/or is entitled to the equitable relief it seeks, given the court's obligation to assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Fenix Enters. v. M&M Mortg. Corp.*[2]

Given the cross-motions for summary judgment, Phoenix will not greatly belabor the factual background and argument made within its motion for summary judgment here, but rather incorporate both by reference, and in turn specifically address the inaccuracies in supposed fact and law set forth in Sears' motion for summary judgment.

---

[2] 624 F.Supp.2d 834, 838 (S.D.Ohio 2009).

## II. ARGUMENT.

### A. The existence of the lease contract precludes Sears' only claim – an equitable claim for unjust enrichment; necessarily Sears is not entitled to summary judgment.

Phoenix previously argued that the doctrine of unjust enrichment cannot apply when an express contract exists. *Homan, Inc. v. A1 AG Servs., LLC et al.*[3] Sears' complaint attaches the lease and amendment that governs the relationship between the parties with regard to the premises and rent. As this court held in *Am. Coal Sales Co. v. N.S. Power Inc.*[4] "because unjust enrichment is an equitable theory of recovery that implies a contractual obligation in the absence of an express agreement, when an express agreement does in fact exist concerning the subject matter of the dispute, the terms and parameters of that express agreement define the parties' liability and unjust enrichment is inapplicable." Specifically, a claim for money had and received/unjust enrichment cannot lie where there exists an express contract between the parties. *Jones v. Petland, Inc.*[5] ("[T]he doctrine of unjust enrichment does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract.") (quoting other authority and applying Ohio law).

Because the various amounts to have been paid for rent over different lease terms are the subject matter of this dispute, and can't be determined without reference to the lease, just like square footage, maintenance, taxes, insurance and utilities, then the lease should govern and there is no basis for an equitable remedy as argued at greater length in Phoenix's motion to dismiss (Doc. # 4).

---

[3] 175 Ohio App. 3d 51, 59, 2008 Ohio 277, 885 N.E.2d 253 (3rd Dist. 2008).
[4] 2009 U.S. Dist. LEXIS 13550 (S.D. Ohio Feb. 23, 2009).
[5] No. 2:08-cv-1128, 2010 U.S. Dist. LEXIS 12538, **16-17 (S.D.Ohio Feb. 11, 2010) (Watson, J.)

While respecting the court's decision in Doc. # 18 that rejected this argument, to avoid any claim of waiver, Phoenix reasserts and incorporates it by reference within this motion given that this equitable claim is the only claim asserted by Sears. Phoenix's argument, if correct, would not only defeat Sears' motion for summary judgment, it would entitle Phoenix to summary judgment.

**B.    None of Sears' cited cases for money had and received/unjust enrichment are applicable to posture of this case.**

All of the authority Sears cites in support of a claim for money had and received/unjust enrichment is totally inapposite. In three of the cited cases there was no valid express contract. *Hummel v. Hummel*,[6] (purported express oral contract invalid under statute of frauds); *W. Ohio Colt Racing Assn. v. Fast*[7] ("[Plaintiff] acknowledges that while there was no contract between itself and [defendant] * * *."); *Hameroff/Milenthal/Spence, Inc. v. Grigg*[8] (money had and received/unjust enrichment claim made for return of loan proceeds where dispute existed as to whether parties' employment contract encompassed loan agreement).

As for the other two cited cases, both *Firestone Tire & Rubber Co. v. Central Natl. Bank of Cleveland*[9] and the <u>Minnesota</u> case it quotes for the sentence Sears quotes, but does not cite, at the top of page 8—*Grand Lodge, A. O. U. W. v. Towne*[10] — <u>concern the doctrine of *mutual* mistake</u>, not, as is applicable to this case, the principle of *unilateral* mistake. *See also Bd. of Edn. of Stow City Sch. Dist. v. Swearingen*, 9th Dist. Summit No. 10742, 1982 Ohio App. LEXIS 12607, \*\*3-4 (Dec. 22, 1982) ("Plaintiff relies on *Firestone* * * *, but that case involved mutual mistake rather than unilateral

---

[6] 133 Ohio St. 520 (1938).
[7] 3d Dist. Mercer No. 10-08-15, 2009-Ohio-1303, ¶ 56.
[8] 10th Dist. Franklin No. 96APE03-289, 1996 Ohio App. LEXIS 4598 (Oct. 15, 1996).
[9] 159 Ohio St. 423 (1953).
[10] 136 Minn. 72 (1917).

mistake."). Plaintiff's claim for money had and received/unjust enrichment therefore cannot lie because the cases cited in support do not apply.

**C.      Sears' equitable argument is dependent upon it establishing that it made a mistake of fact, not law, and this it fails to do.**

Sears' motion for summary judgment undertakes to prove that it did not make a mistake of law and its caption at p. 12 argues that it "did not make a mistake of law because its error did not involve interpretation of lease obligations." This is fundamentally wrong. Its error <u>was specifically the result of making an incorrect interpretation of its lease obligation</u> as set forth by Sears' own witness and as conceded by Sears in its own motion:

>   Doc # 34 at p. 12:    "A mistake of law exists when a party makes an incorrect construction of the terms of a contract."

>   Doc # 34 at p. 10:    "When the Property Administrator prepared a second lease abstract more than a month later, she made a mistake by failing to account for the reduction of the rental rate from $3.35 to $3.00 per square foot per month."

This case is unique, and distinguishable from the cases cited by Sears, in that Sears specifically tasks a property analyst for the very purpose of interpreting Sears' obligations under a lease or lease amendment, preparing a lease abstract with that interpretation, and causing the abstract to be entered in the FIPS payment system. *See generally* Catanese Dep. at p. 18.

As testified to by Sears' 30(b)(6) witness:

```
Q. In 2007 when the property administrator
would make a notation on a least [sic] abstract, what
was the source document that they would be relying
on for the information as to how to modify the
abstract? Was it the amendment itself?

A.   Yes, the original document.
```

5

```
Q.      So I'm sure you've noted in your review
of the file for this case that there was an
amendment entered between Phoenix Warehouse and
Sears Logistic Services, Inc. on June 5th, 2007,
correct?

A.      Correct.

Q.      And this amendment would be the
document that would be put in front of the
property administrator for them to use to markup
the FIPS abstract, correct?

A.      Correct.
```

Catanese Dep. at 20-21, filed as Doc. #32. This is very different than the typical scenario where a contract may be signed and then put in a drawer, and one of the parties then makes a mistake of law in performing under the terms of the contract.

The lease amendment at issue contained both the new term and the new rate.[11] The property administrator's lease abstract, attached as Exhibit B to Catanese's deposition, however, indicated that it was only for a "Lease Extension and Change Term" (p. 1) and failed to properly interpret the lease amendment such that there was no entry of the new rate on the lease abstract. This is not the clerical error claimed by Sears (and without any evidence in support of this claim).

To avoid this result, Sears argues that there can't be a mistake of law on its part because Phoenix's CFO, when asked to read the lease amendment at her deposition could properly interpret its rent provision, and likewise, the lease amendment seems clear to Sears' counsel. But this does nothing to change the fact that the property administrator, whose sole job is to interpret leases and amendments and record their terms on a lease abstract, failed to do so properly. A mistake of law does not require a

---

[11] The lease amendment is attached as Ex. B to plaintiff's complaint.

mutual mistake, i.e. require that Phoenix believed the rate to be $3.35. A mistake of law does not require that the underlying document be ambiguous. Rather, a "payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back." *Nationwide Life Ins. Co. v. Myers*.[12] Simply stated, a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution. *Scott v. Fairbanks Capital Corp.*[13] As stated in *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*,[14] "[w]hen a party with knowledge of the facts, but without legal liability to do so, pays money voluntarily, that person has no claim to recovery for the monies so paid." "[P]ayment made by reason of wrong construction of terms of contract is made under mistake of law." *Sheet Metal Workers Local 98 v. Whitehurst*.[15]

**D.    Phoenix was not required to articulate a "claim of right" in order to establish that a mistake of law precludes Sears' recovery.**

While it is acknowledged that some cases involving a mistake of law discuss a "claim of right," the specific articulation of a "claim of right" by a defendant is not a precondition to the application of the voluntary payment doctrine, see, e.g. *In re Estate of Kangesser*[16] (voluntary payment doctrine barred estate's recovery of improperly-paid inheritance taxes; basing decision on "the common-law principle, that a voluntary payment of money made under a mistake of law is not recoverable, is the recognized

---

[12] 67 Ohio App. 2d 98, 103 (Ohio Ct. App., Summit County 1980), citing *Cincinnati v. Gas Light & Coke Co.* (1895), 53 Ohio St. 278, paragraph three of the syllabus.
[13] 284 F. Supp. 2d 880(S.D. Ohio 2003), citing *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001).
[14] 2013 U.S. Dist. LEXIS 55628 (S.D. Ohio Apr. 18, 2013) citing *Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.*, No. 96APE11-1501, 1997 Ohio App. LEXIS 2854, 1997 WL 358857, *7 (Ohio Ct. App. 1997) (citing *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 147 Ohio St. 79, 67 N.E.2d 906, 911 (Ohio 1946)).
[15] 2004-Ohio-191, ¶ 33 (5th Dist.) citing 69 Ohio Jurisprudence 3d (1986) 13-14, Mistake, Section 9.
[16] 18 Ohio St.2d 139, 142 (1969).

rule in Ohio;" no mention of a requirement that money be paid under a "claim of right");

*Consolidated Mgmt. v. Handee Marts*, *Inc.*[17] (landlord entitled to retain overpaid rent paid by commercial tenant through tenant's miscalculation of rent amounts; no mention of landlord demanding tenant pay the higher amount); and, *Glass v. O'Toole*[18] ("[D]efendants continued to pay rent for some five months after they were informed by the building department at Wickliffe, Ohio, that no permit would be issued for the erection of a frame building. The payments were voluntarily made, and we find no basis in law for the recovery of money voluntarily paid. We have already stated that there is no legal fraud in this case such as to render the payments involuntary; nor do we find that the money was paid under a mistake of fact;" no mention of a requirement that money be paid under a "claim of right").

As additional evidence as to the questionable import of this language, Sears does not offer, and apparently Ohio case law does not provide a definition as to what constitutes a claim of right. In the absence of such a definition, Phoenix notes that it claimed that rent was due and owing and Sears made its payment, whether in the proper amount or not, in satisfaction of that claim.

**E.    Sears' claim that it did not have full knowledge of the facts when it made the payments is simply wrong.**

Sears cites *Nationwide Life Ins. Co. v. Myers*[19] for the proposition that a "mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts." Sears then attempts to argue that it did not have full knowledge of the facts, *ergo*, a mistake of law could not have occurred. Sears doesn't even identify what "facts"

---

[17] 109 Ohio App.3d 185, 187-90 (8th Dist.1996) (O'Donnell, J.)
[18] 36 Ohio App. 450 (8th Dist.1930).
[19] 67 Ohio App.2d 98, 102-103, 425 N.E.2d 952 (9th Dist.1980).

are at issue. The only possible inference is that Sears is making the circular argument that because it didn't know it made a mistake of law in interpreting the lease amendment, it didn't know all of the "facts," therefore, it couldn't have made a mistake of law.

But Sears did have full knowledge of the facts relevant to this dispute regarding payments made under the lease amendment. Having the original lease amendment in front of the property analyst Ms. Turner charges Sears with full knowledge of the facts. In contrast, *Arlington Video Prods. v. Fifth Third Bancorp*[20] provides guidance as to what would not constitute full knowledge, *e.g.* "[t]he evidence shows that Arlington did not voluntarily pay the Bank the fees with full knowledge of the facts. The Bank did not disclose to Arlington all of the facts relating to the deposit adjustment fee or the increase in the returned item fee before automatically withdrawing those fees from Arlington's account and listing unexplained "service charges" on the monthly bank statements."

Sears prepared the lease amendment at issue that set forth the $3.00 rate and sent it to Phoenix for execution. Enneking dep. at p. 19. Further, the amendment with the $3.00 rate was signed by Jeffrey Stollenwerck, senior vice president and president of real estate. Catanese Dep. at 24-25. "The knowledge of the directors and officials [is] the knowledge of the corporation." *Orme v. Baker*.[21] A corporation can act only through its officer and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation. *Orrenmaa v. CTI Audio, Inc.*[22] Sears proposed the new rent rate, prepared the lease amendment with the new rate, and signed the lease

---

[20] 569 F.App'x 379, 389 (6th Cir.2014).
[21] 74 Ohio St. 337, 78 N.E. 439 (1906).
[22] 2008-Ohio-4299, ¶ 110 (11th Dist.) citing Arcanum Nat'l Bank v. Hessler (1982), 69 Ohio St.2d 549, 557, 433 N.E.2d 204.

9

amendment with the new rate. Sears had complete knowledge of the facts relevant to the lease amendment, i.e. the new rate.

### F. Sears' "equity and good conscience" arguments do not apply to a mistake of law.

Sears provides an incomplete account of facts in support of its equitable claim. First, Phoenix did not "sit back and wait to hear from the tenant" upon the advice of counsel. Rather, Phoenix "recalled a prior situation with another tenant that was similar; and our counsel at the time had suggested that we sit back and wait to hear from the tenant, and so we decided to follow that advice for this situation as well." Enneking Dep. at p. 36. Likewise, Phoenix did not knowingly accept overpayments for six years as claimed at p. 7 of Doc. # 34. Rather, it lost track of the issue once it didn't hear from Sears and "the whole issue was forgotten about, frankly." Enneking Dep. at p. 38.

Further, in Sears' introduction at Doc # 34, p. 2 it is claimed that "Phoenix Warehouse does not claim a legal right to the overpaid funds." Sears contradicts itself in the very next sentence where it acknowledges that "Phoenix Warehouse has argued that it can keep the money under the voluntary-payment doctrine, which generally forecloses restitution when a payor mistakenly made payments under a mistake of law." Phoenix has argued since its motion to dismiss that this doctrine forecloses restitution, which is necessarily a claim that it has the legal right to retain the funds.

The issue of "good conscience" is not a factor when the overpayment is a mistake of law. Ohio law provides that repayment is not required in this circumstance – and while the "what would Phoenix do" line of questioning cited by Sears in support of its argument at p. 16 of Doc. #34 is not relevant evidence or legal authority, it is notable

that Phoenix's CFO would not necessarily expert a counterparty to alert her to overpayment made as a result of a mistake of law. *Id.* This is because she understands the doctrine and Sears does not. As Sears' own cited case of *Nationwide Life Ins. Co. v. Myers*[23] (precluding recovery of insurance policy proceeds paid as a result of a mistake of law) states: "[t]here is, in the instant case, no claim of fraud, duress or compulsion. *** There was, herein, an erroneous interpretation of the contract. This is then a matter only of a mistake of law, and not of fact. The Ohio rule may be a harsh doctrine, but we have lived with it for a long time. If the rule is to be changed, Nationwide should look to the legislature or the Supreme Court of Ohio for a change in this common law rule." In short, Sears' mistake of law is "not a claim of equity" and Sears' assertions regarding equity and good conscience are not elements relevant to whether it is entitled to recover the payments given that it made a mistake of law.

**G.     Even if a mistake of fact, Sears' extreme negligence precludes recovery.**

Sears claims at p. 10 that it "had a reliable system in place," however there is no citation to the Catanese affidavit or deposition in support of this claim – and for a reason. Ms. Catanese testified that she is sure that there have been other controversies arising from incomplete or inaccurate information into the FIPS system, although she denies recalling specifics. Dep. at p. 49. Catanese also admits her awareness that Sears is now claiming that it overpaid Phoenix for rent in June 2015, i.e., the year following the filing of this suit, because the FIPS system cannot accurately issue payment to coincide with the termination date of the lease amendment. Dep. at p. 56-57.

---

[23] 67 Ohio App.2d 98, 103-104, 425 N.E.2d 952 (9th Dist.1980).

Here, after the property administrator created a hand-annotated lease abstract with some, but not all of the lease amendment terms, a lease administrator then updated the lease abstract, and printed out a copy for review by the property administrator. Catanese Dep. at p. 30, lines 8-21. After that review by Ms. Turner, the lease abstract supposedly underwent authorization, reauthorization, and execution, and was then entered by a lease administrator into FIPS. See, e.g. Ex. B of Catanese Dep, specifically the approval stamp found at p. 1. Ms. Catanese also testified that as a policy there was quality assurance in place to ensure that all of the terms from the original lease or amendment were properly captured. Dep. at p. 22. On the other hand, she also testified that the property administrator is the only person responsible for putting in the information and confirming that it is accurate. Dep. at p. 53. Either version of events demonstrates extreme negligence.

Either all of this review and quality assurance was negligently performed in that it did not ensure that the proper rate was input into FIPS, or it wasn't done at all and instead Ms. Turner was left entirely up to her own efforts, devices and whims in determining what Sears would be paying over a seven year span – which is likewise negligent. As a result, in June of 2008, Sears began to pay $3.35 a square foot in June consistent with the mistake of law made by Ms. Turner in interpreting the rent obligation under the lease amendment, a mistake that was authorized, reauthorized, and executed, or alternatively never reviewed, despite the size of the warehouse (758,000 square feet, Doc # 1 at ¶7) and the $15,918,000 in rent owed under the amendment. Sears made an overpayment of $22,108.33 per month for 72 months, a total of

12

$1,591,799.70 and can't even explain what happened: Ms. Catanese was asked at p. 11 of her deposition:

```
Q. Did you reach any understanding as to
what had occurred?

A. Not really. Other than a human mistake
was made.
```

Ms. Catanese was asked:

```
Q. At any time between 2007 and 2014, did
Sears or one of its accountants or any other party
do some sort of quality control, quality assurance
to ensure that the information as put into the
system actually matches up with the terms of the
leases entered into between Sears and its
landlords?

A. I don't believe so, no.
```

Catanese at p. 52-53.

Indeed, there was apparently a lease abstract that was initially prepared on July 30, 2007 that contained both the new term and the new rate that was never entered into the FIPS system. Both this July abstract and the Lease Amendment were found within the file when produced in discovery. Ms. Catanese has no explanation as to why the July abstract was not entered into the FIPS system in July, or why a second abstract was created. Catanese at p. 46.

Given the complete lack of any effective peer review, oversight, supervision, quality control, auditing or accounting, it appears that Sears would pay any amount of money for any length of time, regardless of what the lease amendment actually called for, so long as Ms. Turner made such a handwritten annotation on a lease abstract.

> Negligence of the payer in failing to discover the facts will not prevent recovery where the payment is actually made under mistake of fact, and the mere failure of the payer to avail himself of means of knowledge will not preclude his recovery <u>unless</u> **it appears that he intended to waive inquiry into the facts, was under a legal duty to ascertain them *or* is by law presumed to have knowledge of them.**

*Firestone Tire & Rubber Co. v. Central Natl. Bank of Cleveland.*[24] *See also,* 73 OHIO JUR.3d Payment and Tender § 76 (2015) (same)*; Broadview Sav. & Loan Co. v. Andrassy.*[25]

Sears' negligence[26] precludes recovery on at least two bases. Sears went 72 months without any known effort to determine whether the data entered by Ms. Turner was correct, thus it waived inquiry. The "presumed by law" exception also clearly applies here, as "it is hornbook law that employers are considered to know what their employees know[.]" *Russ v. TRW, Inc.*[27]; *see also Golubski v. United States Plastic Equip., LLC*,[28] ¶ 29 ("[T]he knowledge of the company's employees and officers is imputed to the corporation.") (citing *First Natl. Bank of New Bremen v. Burns*[29]). Sears is therefore "presumed to have knowledge" of the correct, lower lease rates submitted to its agent Beth Turner, the contents of its lease files, and is thus fully responsible for Turner's negligence in failing to place such rates into plaintiff's computer system.

---

[24] 159 Ohio St. 423 (1953), paragraph three of the syllabus (emphasis added).
[25] 8th Dist. Cuyahoga No. 52518, 1988 Ohio App. LEXIS 425, *5 (Feb. 11, 1988).
[26] Phoenix asserted Sears' negligence as an affirmative defense.
[27] 59 Ohio St.3d 42, 51 n. 5 (1991) (H. Brown, J., concurring in part and dissenting in part).
[28] 11th Dist. Portage No. 2015-P-0001, 2015-Ohio-4239.
[29] 88 Ohio St. 434 (1913), paragraph two of the syllabus.

### III. CONCLUSION.

For the reasons set forth above, Phoenix Warehouse respectfully requests that the court deny Sears' motion for summary judgment as, when assuming as true Phoenix's evidence and drawing all reasonable inferences in the favor of Phoenix, Sears failed to meet its burden under Civ. R. 56 with respect to its only claim, an equitable claim of a mistake of fact.

Respectfully submitted,

**LANE, ALTON & HORST LLC**

/s/ *Ed Hubbard*

_____
Edward G. Hubbard        (0067784)
Two Miranova Place, Ste. 500
Columbus, Ohio 43215-7052
614-228-6885; 614-228-0146 fax
ehubbard@lanealton.com
***Counsel for Defendant***

### CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was duly served via ecf on October 19, 2015 upon the following:

Charles E. Tichnor, III
Gregory P. Mathews
**DINSMORE & SHOHL, LLP**
191 W. Nationwide Blvd., Ste. 300
Columbus, Ohio 43215
***Attorneys for Plaintiff***

/s/ *Ed Hubbard*

_____
Edward G. Hubbard        (0067784)