**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Innovel Solutions, Inc.,

       Plaintiff,

v.

Phoenix Warehouse,

       Defendant.

Case No. 2:14-cv-999

Judge Watson

Magistrate Judge Kemp

**DEFENDANT PHOENIX WAREHOUSE'S REPLY BRIEF TO PLAINTIFF'S
MEMORANDUM IN OPPOSITION TO PHOENIX WAREHOUSE'S MOTION FOR
SUMMARY JUDGMENT**

**I.    INTRODUCTION**

There is no argument in *Plaintiff's Memorandum in Opposition to Phoenix
Warehouse's Motion for Summary Judgment* (Doc. 39) which in any way defeats
Phoenix's right to summary judgment. Phoenix therefore submits it is entitled to
summary judgment on the claim of plaintiff Innovel Solutions, Inc.[1]

**II.    LAW AND ARGUMENT**

Plaintiff Innovel offers three arguments for denying Phoenix's Motion for
Summary Judgment pursuant to the voluntary payment doctrine, that 1) application of
the doctrine is dependent on the payee making a "claim of right" to the subject
payments; 2) the subject payments resulted from a mistake of fact rather than mistake
of law; and 3) Innovel lacked "full knowledge of the facts" when it made the subject
payments.

Each of Innovel's assertions lack merit, and Phoenix therefore is entitled to
summary judgment.

---

[1] *See* Oct. 29, 2015 *Opinion and Order* of Mag. Judge Kemp (Doc. 41), substituting Innovel Solutions, Inc.
for Sears Logistics Services, Inc. as plaintiff in this action.

**A.  Application of the Voluntary Payment Doctrine is *not* Dependent on the Payee Making a "Claim of Right" to the Subject Payments.**

Innovel's contention that the voluntary payment doctrine cannot apply where the payee has not made to the payee a "claim of right" to the payment is wrong. Phoenix's *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 40, pp. 7-8) demonstrated that application of the voluntary payment doctrine is not at all contingent on the payee asserting to the payor a "claim of right" to the subject payments. In the cases Phoenix cited, Ohio courts applied the doctrine without any mention of the payee having made a "claim of right" to the payments.[2]

Further, the fact that the doctrine fully applies in the absence a "claim of right" is evident from the fact that the doctrine is sometimes defined in terms which do not include the "claim of right" language at all, e.g., "[w]hen a party with knowledge of the facts, but without legal liability to do so, pays money voluntarily, that person has no claim to recovery for the monies so paid." *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*[3]

Finally, as Phoenix also noted in its *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 40, p. 8), being that Innovel has not offered—and Ohio case law apparently does not provide—a definition as to what constitutes a "claim of right," even assuming, solely *arguendo*, the court deems a "claim of right" to be necessary, Phoenix notes that its claiming to Innovel that rent was due and owing constitutes the required "claim of right."

---

[2] *See In re Estate of Kangesser*, 18 Ohio St.2d 139, 142 (1969); *Consol. Mgmt. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 187-90 (8th Dist.1996) (O'Donnell, J.); *Glass v. O'Toole*, 36 Ohio App. 450 (8th Dist.1930).

[3] No. 2:12-cv-812, 2013 U.S. Dist. LEXIS 55628, *11 (S.D.Ohio Apr. 18, 2013) (citing *Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.*, 10th Dist. Franklin No. 96APE11-1501, 1997 Ohio App. LEXIS 2854 (Ohio Ct. App. 1997) (citing *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 147 Ohio St. 79, 67 N.E.2d 906, 911 (1946)).

Therefore, Innovel is incorrect in arguing that application of the voluntary payment doctrine is dependent on the payee asserting to the payor a "claim of right" to the subject payments and the voluntary payment doctrine bars Innovel's claim to recovery of the payments.

**B.** **The Subject Payments Resulted from a Mistake of *Law*, not Fact.**

**1.** **The Payments Resulted from a Mistake of Law and are thus Non-Recoverable.**

Phoenix's *Mot. for Summ. Judgment* (Doc. 35, p. 6) and *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 40, pp. 5-7) show that Innovel's payments resulted from a mistake of *law*, not fact, and that Innovel therefore *cannot* recover the payments, being that "the common-law principle, that a voluntary payment of money made under a mistake of law is not recoverable, is the recognized rule in Ohio." *In re Estate of Kangesser*.[4]

Innovel's contentions to the contrary—i.e., its mistake was of fact, not law—are unconvincing. Its reliance on this court's statement in its May 4, 2015 *Opinion and Order* (Doc. 18) denying Phoenix's Motion to Dismiss that "Ohio courts have found this type of mistake [as Innovel described Property Manager Beth Turner's actions in its Complaint] to be a mistake of fact" is misplaced. The court made clear in the *Opinion and Order* that it based the quoted statement on the allegations in Innovel's Complaint, which it was required to accept as true, and construe in a light most favorable to Innovel, under Fed.R.Civ.P. 12(b)(6). All the court held in the *Opinion and Order* was that, under the strictures of Rule 12(b)(6), it was "plausible that Sears' overpayments were the result of a mistake of fact." (Doc. 18, p. 7.) The observations in the *Opinion and Order*, in necessarily being based only on Innovel's Complaint rather than the evidence since elicited in discovery, are neither conclusive nor the law of the case, and thus do not

---

[4] 18 Ohio St.2d 139, 142 (1969); *see also Consol. Mgmt. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 189 (8th Dist.1996) (O'Donnell, J.) ("Money paid as a result of mistake of law is not recoverable[.]").

portend the ruling on Phoenix's Motion for Summary Judgment. *See Thompson v. Transam Trucking, Inc.*[5] ("A decision on a motion to dismiss * * * does not establish the law of the case for purposes of summary judgment."); *Wilson v. Buckeye Steel Castings Co.*[6] ("[D]ecisions stemming from a motion to dismiss do not constitute the law of the case.").

The parties agree that under Ohio law, payment made through misinterpretation or wrongful construction of a contract constitutes a mistake of *law*, not fact. E.g., *Salling v. Budget Rent-A-Car Sys.*[7] ("A payment made by reason of a wrong construction of the terms of a contract is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back."). The parties do not agree, though, whether Beth Turner's actions were a mistake of law or of fact.

The evidence - which was not before the court in May 2015—gives us the answer. Phoenix's *Mot. for Summ. Judgment* (Doc. 35) and *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 40) describe Ms. Turner's actions in detail, and set forth why they indeed were a misconstruction or misinterpretation of the lease amendment, and therefore a mistake of *law.*

Innovel's arguments to the contrary cannot carry the day, as the record establishes without dispute that Ms. Turner was presented the lease amendment in order to properly *interpret*, or *construe*, the lease amendment and enter the pertinent information therein on a lease abstract. The pertinent information in this case was the lease amendment's 1) new lease term, and 2) new lease rate. Had Ms. Turner **properly interpreted** and *construed* the amendment, she would have noted *both* new items in the lease abstract. Her failure to enter both (entering the new term only) was thus, necessarily, the result of **misinterpreting** and **misconstruing** the lease amendment's

---

[5] No. 2:08-cv-927, 2011 U.S. Dist. Lᴇxɪs 61176, *15 (S.D.Ohio June 8, 2011).

[6] No. 2:99-CV-1300, 2001 U.S. Dist. Lᴇxɪs 26923, *12 (S.D.Ohio Sept. 25, 2001).

[7] 672 F.3d 442, 445 (6th Cir. 2012) (applying Ohio law).

terms, and was therefore a mistake of law, not fact. The voluntary payment doctrine thus applies to bar Innovel's claim to recovery of the payments.

### 2. Even Assuming the Payments Resulted from a Mistake of Fact, they are Still Non-Recoverable.

Moreover, even assuming, solely *arguendo*, Innovel's mistake is considered to be one of fact, Innovel is barred from recovery nonetheless. As Phoenix noted in its *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 40, pp. 13-14), one making payments based on a mistake of fact will be barred from recovery in certain circumstances:

> Negligence of the payer in failing to discover the facts will not prevent recovery where the payment is actually made under mistake of fact, and the mere failure of the payer to avail himself of means of knowledge will not preclude his recovery **_unless_ _it appears that he intended to waive inquiry into the facts, was under a legal duty to ascertain them or is by law presumed to have knowledge of them._**

*Firestone Tire & Rubber Co. v. Central Natl. Bank of Cleveland*, paragraph three of the syllabus (emphasis added).[8] *See also* 73 Ohio Jur.3d *Payment and Tender* § 76 (2015) (same)*; Broadview Sav. & Loan Co. v. Andrassy*[9] *(*same).

Two of the *Firestone* exceptions apply here, barring Innovel from recovery due to its mistake of fact (if the court considers the mistake to be one of fact rather than law). First, Innovel's waiting *six years* to make any known effort to determine whether the rent it was paying was the rate provided in the lease amendment clearly shows it "waive[d] inquiry into the facts." Second, the knowledge by Ms. Turner and Innovel Senior Vice President and President of Real Estate Jeffrey Stollenwerck (see discussion, *infra*) of the lease amendment's true facts establishes that Innovel certainly was "by law presumed to have knowledge of" such facts: "It is hornbook law that employers are

---

[8] 159 Ohio St. 423 (1953).

[9] 8th Dist. Cuyahoga No. 52518, 1988 Ohio App. Lexis 425, *5 (Feb. 11, 1988).

considered to know what their employees know[.]" *Russ v. TRW, Inc.*;[10] *see also cases* discussed at pp. 6-8, *infra; Golubski v. United States Plastic Equip., LLC*[11] ("[T]he knowledge of the company's employees and officers is imputed to the corporation.").

Therefore, under the above-two *Firestone* exceptions, Innovel's mistake which resulted in making the subject payments, even if considered a mistake of fact rather than of law, nonetheless bars Innovel from recovery thereof.

### C. Sears *did Indeed* have "Full Knowledge of the Facts" when it Made the Subject Payments.

The only "facts" pertinent to this dispute are both clearly set forth on the lease amendment—1) the new lease term, and 2) the new lease rate. Phoenix's *Mot. for Summ. Judgment* (Doc. 35, pp. 7-9) and *Memo. Opp. to Innovel's Mot. for Summ. Judgment* (Doc. 8-10) have clearly demonstrated that Innovel certainly did have "full knowledge" of these facts when it made the subject payments over a seven-year period. Phoenix showed therein that 1) Innovel prepared the subject lease amendment; 2) Innovel Senior Vice President and President of Real Estate Jeffrey Stollenwerck signed the lease amendment; and 3) Innovel Property Administrator Beth Turner was presented the lease amendment before preparing the lease abstract.

Innovel's argument to the contrary is not only without any valid basis, but is incredible, also—it asserts that although Beth Turner had full knowledge of the facts when she prepared the lease abstract, *it*—i.e., Innovel—"did not have full knowledge of the facts when it made each overpayment." (Doc. 39, p. 8.)

Innovel's position has no legal support whatsoever, for (as addressed at pp. 4-5, *supra*), it is settled beyond dispute that, a corporation is in fact deemed to have knowledge of all of that which is known to its employees and agents: "A corporation is an artificial, legally created entity that can have no 'knowledge' itself and is said to have

---

[10] 59 Ohio St.3d 42, 51 n. 5 (1991) (H. Brown, J., concurring in part and dissenting in part).
[11] 11th Dist. Portage No. 2015-P-0001, 2015-Ohio-4239, ¶ 29.

'knowledge' only through its employees." *United States v. A & P Trucking Co.*;[12] *see also Am. Standard Credit, Inc. v. Natl. Cement Co.*[13] ("The only way to communicate actual notice to a corporation is through its agents."); *Paul v. Caldwell Furnace Foundry Co.*[14] ("The **only way in which knowledge can come to a corporation, ordinarily, is through its agents and officers**.") (emphasis added). Therefore, "[t]he knowledge of an agent that is acquired within the scope of his or her employment regarding the matters to which his authority extends is imputed to the principal, especially if the principal is a corporation, which can only act through its officers and employees." *Hometown Health Plan v. Aultman Health Found*;[15] *see also United States Bank of New England, N.A.*[16] ("Corporations compartmentalize knowledge, subdividing the elements of specific duties and operations into smaller components. The aggregate of those components constitutes the corporation's knowledge of a particular operation. It is irrelevant whether employees administering one component of an operation know the specific activities of employees administering another aspect of the operation.").

There is thus no merit whatsoever to Innovel's contention that it lacked the "full knowledge of the facts" unquestionably possessed by its officer Stollenwerck and employees/agent Turner:

> * * * [K]nowledge acquired by employees within the scope of their employment is imputed to the corporation. In consequence, *a corporation **cannot plead innocence** by*

---

[12] 358 U.S. 121, 127 (1958) (Douglas, J, concurring in part and dissenting in part). *See also Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 348 (1985) ("As an inanimate entity, a corporation must act through agents.").

[13] 643 F.2d 248, 270 (5th Cir. 1981).

[14] 7 Ohio C.C. (n.s.) 272 (6th Dist.1905).

[15] Tuscarawas C.P. No. 2006 CV 06 0350, 2009 Ohio Misc. Lexis 550, *21 (Apr. 17, 2009). *See also* Doc. 40, p. 14; *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014) (""The common-law rule providing that notice to the agent is notice to the principal is well settled in Ohio. * * * A principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority.").

[16] 821 F.2d 844, 856 (1st Cir. 1987).

> *asserting that the information obtained by several employees was not acquired by any one individual employee who then would have comprehended its full import.* Rather, *the corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act accordingly.*

*In re NM Holdings Co., LLC* (emphasis added).[17]

The law *forbids* Innovel from disavowing the knowledge of its officers, agents, and employees. Therefore, as Innovel Officer Jeffrey Stollenwerck and employee/agent Beth Turner had "full knowledge" of the relevant facts—the lease amendment's new duration and new rate—and as their knowledge is deemed to be the knowledge of Innovel itself, Innovel did indeed have "full knowledge of the facts" when it made the subject payments. The voluntary payment doctrine thus applies to bar Innovel's claim to recovery of the payments.

## III.  CONCLUSION

For the reasons set forth herein and in its Motion for Summary Judgment, Phoenix Warehouse respectfully requests that the court grant it summary judgment, as the lease between the parties precludes plaintiff's equitable claim and plaintiff's mistake of law in interpreting the lease amendment precludes its claims for repayment of the monies it paid as a result of that mistake of law.

Respectfully submitted,

/s/ *Ed Hubbard*
Edward G. Hubbard         (0067784)
**LANE ALTON**
Two Miranova Place, Ste. 220
Columbus, Ohio 43215-7052
614-228-6885; 614-228-0146 fax
ehubbard@lanealton.com
***Trial Counsel for Defendant***

---

[17] 622 F.3d 613, 620 (6th Cir. 2010). While *NM Holdings* applied the substantive corporate law of Michigan, a review of the applicable authority shows the quoted doctrine is not limited to that state only. *See, e.g., United States Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir. 1987); *Miller v. Holzmann*, 563 F.Supp.2d 54, 101 n. 55 (D.D.C. 2008); *United States v. T.I.M.E.-D.C., Inc.*, 381 F.Supp. 730, 738 (W.D.Va. 1974).

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was duly served via ECF on this 2nd day

of November, 2015, upon the following:

Charles E. Tichnor, III
Gregory P. Mathews
**DINSMORE & SHOHL, LLP**
191 W. Nationwide Blvd., Ste. 300
Columbus, Ohio 43215
***Attorneys for Plaintiff***

/s/ *Ed Hubbard*
Edward G. Hubbard          (0067784)