UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Innovel Solutions, Inc.,

    Plaintiff,

v.

Phoenix Warehouse,

    Defendant.

Case No. 2:14-cv-999

Judge Watson

Magistrate Judge Kemp

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Q.    And do you recall whether you considered notifying Sear's [sic] of the issue?

A.    I discussed it with Guy, and we had recalled a prior situation with another tenant that was similar; and our counsel at the time had suggested that *we sit back and wait to hear from the tenant, and so we decided to follow that advice for this situation as well*.

Q.    So at the time, you didn't consider refunding or notifying Sear's [sic] and issuing a check back to them for the amount?

A.    No.

\* \* \*

Q.    So the plan at the time was just to wait and see; is that correct?

A.    Yes.

(Enneking Dep. at 36, 39) (emphasis added).

This testimony describes Phoenix Warehouse's response when it realized its long-term tenant had overpaid its monthly rent by $22,108.33 sometime in 2008—Phoenix Warehouse chose to do nothing, say nothing, and "sit back and wait."

The overpayments, which were being processed automatically each month, continued for six years and eventually totaled almost $1.6 million. When confronted about this windfall in 2014, Phoenix Warehouse refused a refund. Phoenix Warehouse now contends that it was not taking advantage of the situation but merely proceeding based on its superior understanding of the law.[1] But Phoenix Warehouse misjudged the law. For six years, Sears Logistics operated under a mistake brought about by a Property Administrator's failure to read the Amendment to Lease fully and carefully. All the while, Phoenix Warehouse never claimed it had a right to $211,608.33 each month. These facts describe a quintessentially factual mistake that led to a payee's unjust enrichment. Under Ohio law, equity demands restitution, and Phoenix Warehouse's only defense—the voluntary-payment doctrine—cannot apply.

**ARGUMENT**

**1. Phoenix Warehouse has a moral obligation to make restitution.**

This Court already has stated and applied the standard for a claim for money had and received under Ohio law. *See* Opinion and Order, Doc. 18, filed 5/4/2015, at 4. It applies "when a party to a contract has fully performed and another party has been unjustly enriched." *W. Ohio Colt Racing Ass'n v. Fast*, 3d Dist. Mercer No. 10-08-15, 2009-Ohio-1303, 2009 Ohio App. LEXIS 1168, ¶ 53 (citing *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938)). It arises from "a moral obligation to make restitution where keeping the benefits would result in inequity or injustice." *Id.* (citing *Hummel* at 526). In deciding a claim for money had and received, a court must ask " 'whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts a claim.' " Opinion and Order, Doc. 18, at 4 (quoting *Firestone Tire & Rubber Co. v. Cent. Nat'l Bank of Cleveland*, 159 Ohio St. 423, 434,

---

[1] *See* Phoenix Warehouse's Opposition to Plaintiff's Motion for Summary Judgment, Doc. 40, at 11.

112 N.E.2d 636 (1953)). "Equity and good conscience" is relevant because a claim for money had and received rests on a payee's "moral obligation" not to take "any undue advantage . . . of the plaintiff's situation." *Hummel* at 526, 527 (quoting Blackstone Commentaries, Book III, 163).

In deciding a claim for money had and received, a court must consider the rights, knowledge, and conduct of both payor and payee. A payor should take precaution to ensure that proper payment is made, although the payor's negligence ordinarily will not prevent restitution. *See Firestone* at paragraphs three and six of the syllabus. The payee has a similar duty to act in good faith. A payee, for example, cannot invite the payor's mistake. *See id*. at paragraph six of the syllabus. In this respect, the Supreme Court of Ohio has held that

> . . . if the payee, **through indifference or negligence**, assists, though innocently, in any . . . mistake which induces a payment on such obligation, he will not be permitted to retain the proceeds of the payment made by the payer whose sole fault was that he did not discover the . . . mistake before the payment was made, unless such payee in good faith changes his position so that he is in a worse position if he is required to refund it, than if the payer had refused to pay.

*Id*. (emphasis added).

In this case, Sears Logistics took precautions to ensure that it would make timely and proper payments by creating and implementing an automated-payment system and hiring employees to input data into that system. Like any system, however, FIPS is subject to human error. Here, the process broke down, first, when Beth Turner failed to give her correctly-prepared lease abstract to Angela Lipovetsky and, second, when she failed to include the unambiguous rent reduction in her second lease abstract. (*See* Catanese Aff. at ¶ 9-12 & Ex. C, D; Catanese Dep. at 14-15, 29-31, 45-47.) Phoenix Warehouse tries to distract the Court from these facts with its exaggerated argument "that Sears would pay any amount of money for any length of time, regardless of what the lease amendment actually called for, so long as Ms. Turner made such a

3

handwritten annotation on a lease abstract."[2] But the Court must deal with the facts in this case,[3] not hyperbole. Here, the undisputed facts show that Sears Logistics made a good-faith effort to pay Phoenix Warehouse the proper amount under the Amendment to Lease.

Phoenix Warehouse, on the other hand, did not act in good faith over the course of the six years at issue. Although Phoenix Warehouse protests that it did not "sit back and wait" to hear from Sears Logistics based on the advice of counsel,[4] the testimony of its CFO shows that that is precisely what it did. (*See* Enneking Dep. at 36.) Indeed, the undisputed facts show that Phoenix Warehouse had the opportunity to notify Sears Logistics of the mistake for six years but instead invited repeated mistaken payments through its own "indifference or negligence." *See Firestone* at paragraph six of the syllabus. Phoenix Warehouse's only response to this reality is that it did not *knowingly* accept the overpayments for six years, because it "lost track of the issue."[5] Phoenix Warehouse claims that it didn't realize it was receiving an extra $22,108.33 each month on the one lease that comprises the entirety of its business (*See* Enneking Dep. at 14-15, 38-39.)

The undisputed facts show that Phoenix Warehouse tried to take advantage of Sears Logistics' mistake through either willful ignorance or knowing acceptance of overpayments for six years. Under these circumstances, Ohio law recognizes Phoenix Warehouse's moral obligation to provide restitution.

---

[2] Phoenix Warehouse's Opposition to Plaintiff's Motion for Summary Judgment, Doc. 40, at 13.

[3] Phoenix Warehouse also refers to an overpayment made in June 2015 involving the final payment under the Amendment to Lease for a partial month. *See* Phoenix Warehouse's Opposition to Plaintiff's Motion for Summary Judgment, Doc. 40, at 11. That overpayment is not at issue in this lawsuit. In fact, because the overpayments at issue in this lawsuit did not involve the termination date or payment for a partial month, the June 2015 overpayment is irrelevant to this case.

[4] *See* Phoenix Warehouse's Opposition to Plaintiff's Motion for Summary Judgment, Doc. 40, at 10.

[5] *Id.*

## 2. The voluntary-payment doctrine does not apply.

Phoenix Warehouse's only equitable defense is that the voluntary-payment doctrine applies. The doctrine requires Phoenix Warehouse to prove that (1) Sears Logistics made the overpayments due to a mistake of law, (2) Phoenix Warehouse claimed the right to the overpayments, and (3) Sears Logistics had full knowledge of the facts. *See Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 Fed. Appx. 379, 389 (6th Cir. 2014). As has been discussed at length already, the mistake here was factual, not legal, because it involved "an unconscious ignorance or forgetfulness of a fact" rather than "an imperfect or incorrect exercise of judgment." *See Consol. Mgmt. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 189, 671 N.E.2d 1304 (Ohio App. 1996) (quoting Black's Law Dictionary, Fifth Edition and 73 Ohio Jurisprudence 3d (1986) 74).

Knowing that it never made a claim of right to the funds, Phoenix Warehouse contends that Ohio law does not require that element. To the contrary, the Sixth Circuit and this Court have repeatedly referred to a payee's "claim of right" in reciting the voluntary-payment doctrine under Ohio law. *See* Opinion and Order, Doc. 18, at 5; *Arlington Video* at 389; *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012); *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*, No. 2:12-cv-812, 2013 U.S. Dist. LEXIS 55628, *10 (S.D. Ohio Apr. 18, 2013); *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D. Ohio 2003). Ohio and federal courts consistently recognize this element. *See, e.g.*, *Handee Marts* at 189, 190.

Phoenix Warehouse also argues that Sears Logistics had full knowledge of the facts because Sears employees viewed the Amendment to Lease at various times in 2007. Phoenix Warehouse's argument fails, however, because the Court must consider Sears Logistics' knowledge *at the time it made the seventy-two payments*. Jeffrey Stollenwerck signed the Amendment to Lease in June 2007, and information from Beth Turner's second lease abstract

5

was inputted into FIPS in September 2007. (Catanese Aff. at ¶ 4, 12, Ex. B, D) The first mistaken payment was issued months later in May 27, 2008. (*Id.* at ¶ 13-14, Ex. E (SLS 00127)) Phoenix Warehouse has not proved that all the relevant facts "were known and considered" by Sears Logistics each of the seventy-two times it overpaid rent. *See Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 103, 425 N.E.2d 952 (Ohio App. 1980).

### 3. The Court already rejected Phoenix Warehouse's argument that the parties' contract bars Sears Logistics' claim.

Phoenix Warehouse again argues that Sears Logistics' claim should be dismissed because an express contract governs the parties' relationship. The Court rejected that argument once already, stating:

> Phoenix's argument is not well taken. As Sears explains, its claim does not arise under the parties' contractual relationship, as it is based on payments made outside the terms of Lease that cannot be the subject of a breach of contract claim. In other words, the Lease cannot afford Sears the recovery it seeks through its "money had and received/unjust enrichment" claim.

Opinion and Order, Doc. 18, at 8. There is no reason for the Court to depart from its earlier decision on this issue, because Ohio law allows for a claim for money had and received even if the parties have a contractual relationship: "Ohio recognizes a cause of action for money had and received when *a party to a contract* has fully performed and another party has been unjustly enriched." *W. Ohio Colt Racing*, 2009-Ohio-1303, 2009 Ohio App. LEXIS 1168, at ¶ 53 (citing *Hummel*, 133 Ohio St. at 528) (emphasis added).

## CONCLUSION

Phoenix Warehouse has been unjustly enriched, and Sears Logistics is entitled to restitution. The Court should enter judgment in Sears Logistics' favor in the amount of $1,591,799.70, plus prejudgment interest.[6]

Respectfully submitted,

*s/ Gregory P. Mathews*
Charles E. Ticknor, III (0042559)
Gregory P. Mathews (0078276)
DINSMORE & SHOHL, LLP
191 W. Nationwide Boulevard, Suite 300
Columbus, Ohio 43215
Phone: (614) 628-6880
Fax: (614) 628-6890
charles.ticknor@dinsmore.com
gregory.mathews@dinsmore.com
*Attorneys for Plaintiff Innovel Solutions, Inc. (f/k/a Sears Logistics Services, Inc.)*

---

[6] *See Desai v. Franklin*, 177 Ohio App.3d 679, 2008-Ohio-3957, 895 N.E.2d 875, ¶ 32 (9th Dist.) (holding that trial court was required to award prejudgment interest on unjust-enrichment damages under Ohio Revised Code § 1343.03(A)); *Euro Tyres Corp. v. SK Mach. Corp.*, No. 5:08CV2953, 2010 U.S. Dist. LEXIS 7237, *2-3 (N.D. Ohio Jan. 28, 2010) (quoting *Desai* and stating that "[t]he primary question that must be answered prior to awarding prejudgment interest is whether the aggrieved party has been fully compensated").

## **CERTIFICATE OF SERVICE**

       I certify that on November 2, 2015, I electronically filed the foregoing Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to:

    Edward G. Hubbard
    Lane, Alton & Horst LLC
    ehubbard@lanealton.com
    *Attorney for Defendant Phoenix Warehouse*

                                        *s/ Gregory P. Mathews*
                                        An Attorney for Plaintiff