UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Innovel Solutions, Inc.,

        Plaintiff,                    Case No. 2:14–cv–999

        v.                       Judge Michael H. Watson

Phoenix Warehouse,

        Defendant.

## OPINION AND ORDER

Innovel Solutions, Inc. ("Innovel")[1] sues Phoenix Warehouse ("Phoenix")
seeking restitution of overpaid rent. The case is presently before the Court on
the parties' cross motions for summary judgment, ECF Nos. 34 & 35. For the
following reasons, the Court **DENIES** both motions.

## I. BACKGROUND

The following facts are taken from Innovel's complaint, ECF No. 1.

Innovel and Phoenix are successors in interest to an Industrial Building
Lease ("Lease") pursuant to which Innovel leases a 758,000 square foot building
from Phoenix.

---

[1] This case was initially filed by Sears Logistics Services, Inc. ("Sears"). After the
completion of dispositive motions briefing, the Magistrate Judge granted Sears leave to
amend and replace Sears as Plaintiff with Innovel. Order, ECF No. 41.

The initial term of the Lease was ten years. The Lease then provided Innovel with four additional five-year option periods, with the rental rate increasing for each successive period.

Relevant here, the Lease provided that the rental rate was $3.05 per square foot during the second option period and $3.35 per square foot during the third option period.

In June 2007, during the second option period, Innovel and Phoenix amended the Lease to extend the third option period from five years to seven years and to decrease the rental rate from $3.35 per square foot to $3 per square foot ("the Lease Amendment").

Instead of decreasing its monthly payments for the third period in accordance with this amendment, Innovel mistakenly made payments at the pre-amendment rate of $3.35 per square foot.

Innovel made the payments automatically through an electronic payment system that was programmed to increase the payment amount according to the initial terms of the Lease. The payment system was never updated to reflect the new rate in accordance with the Lease Amendment.

Innovel made these overpayments for six years, resulting in overpaid rent to Phoenix in the amount of $1,591,799.70. Innovel discovered the mistake in 2014 and demanded restitution of the overpaid funds, but Phoenix refused. Innovel now brings the instant action to compel recovery of the funds.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cnty Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting

*Anderson*, 477 U.S. at 251–52).

In reviewing cross-motions for summary judgment, courts should "evaluate

each motion on its own merits and view all facts and inferences in the light most

favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th

Cir. 1994).

## III. ANALYSIS

### A. Money Had and Received

Innovel styles its claim for recovery of the overpaid rent as one for "money

had and received/unjust enrichment." Compl., ECF No. 1. Both parties move for

summary judgment on this claim.

> Ohio recognizes a cause of action for money had and received when
> a party to a contract has fully performed and another party has been
> unjustly enriched. *Hummel v. Hummel* (1938), 133 Ohio St. 520,
> 528, 14 N.E.2d 923. This cause of action is one based in equity, not
> on a contractual but rather a moral obligation to make restitution
> where keeping the benefits would result in inequity or injustice. *Id.* at
> 526, 14 N.E.2d 923. Therefore, a party may be held not liable on the
> contract, but nevertheless, be liable in equity. *Id.*

*W. Ohio Colt Racing Assn. v. Fast*, No. 10–08–15, 2009 WL 737776, at *13

(Ohio Ct. App. Dist. 3 Mar. 23, 2009). An action for "money had and received" is

a claim in quasi-contract which, in turn, is based upon the equitable doctrine of

unjust enrichment. *Drozeck v. Lawyers Title Ins. Corp.*, 140 Ohio App. 3d 816,

823 (Ohio Ct. App. Dist. 8 Dec. 28, 2000) (citing *Hummel*, 133 Ohio St. at 526–

27).

Under this theory of relief, "[w]here money is paid by mistake, neither party being in fault, the party paying the money may recover it as money paid without consideration . . . ." *Firestone Tire & Rubber Co. v. Cent. Nat. Bank of Cleveland*, 159 Ohio St. 423, 433 (1953) (citation omitted); *Hameroff/Milenthal/Spence, Inc. v. Grigg*, No. 96APE03-289, 1996 WL 598537, at *2 (Ohio Ct. App. Dist. 10 Oct. 15, 1996) ("A cause of action for money had and received lies when one receives money from another without valuable consideration given on the receiver's part.") (citing *Hummel*, 133 Ohio St. at 520).

"The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim." *Firestone*, 159 Ohio St. at 434 (citation omitted). More specifically,

> [t]he test is whether defendant has a right to retain the money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience to pay it over.

*Id.*[2]

Innovel argues that it mistakenly paid Phoenix excess rent in the amount of $1,591,799.70, that Phoenix did not give consideration for the overpayments, and that Phoenix has no legal or equitable right to the funds. As such, Innovel

---

[2] In recounting the applicable law, the Court rejects Innovel's apparent argument that a claim for money had/money received can only lie in the event of mutual mistake. *See* Def.'s Resp. 4, ECF No. 40.

avers, it is entitled to recover the overpaid funds under the theory of money had/money received.

Phoenix does not dispute that Innovel mistakenly paid it excess rent or that Phoenix did not provide consideration for the overpayment. Rather, Phoenix argues that it has a right to retain the payments pursuant to the voluntary payment doctrine.

## B. The Voluntary Payment Doctrine

"Under Ohio law, money voluntarily paid by one person laboring under a mistake of fact to another person who claims the right to such payment is generally recoverable, but money voluntarily paid as a result of a mistake of law is not. Simply stated, a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 F. App'x 379, 389 (6th Cir. 2014) (internal quotation marks and citations omitted); *see also Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003) ("'In the absence of fraud, duress, compulsion or *mistake of fact*, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay.'") (quoting *State ex rel. Dickman v. Defenbacher*, 151 Ohio St. 391, 395 (1949)) (emphasis added); *Wears Kahn McMenamy & Co. v. JPMorgan Chase Bank, N.A.*, No. 2:12–cv–812, 2013 WL 1689030, at *4 (S.D. Ohio Apr. 18, 2013).

The parties agree that to succeed on its voluntary payment defense, Phoenix must prove that Innovel voluntarily overpaid rent due to a mistake of law. They dispute, however, whether Innovel is also required to prove that Phoenix claimed a right to those overpayments.

Phoenix acknowledges that some cases addressing the voluntary payment doctrine include language regarding a claim of right. *See, e.g.*, *Dickman*, 151 Ohio St. at 395; *Arlington Video Prods.*, 569 F. App'x at 389; *Wears*, 2013 WL 1689030, at \*4; *Fairbanks Capital*, 284 F. Supp. 2d at 894; *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 444 (6th Cir. 2012); *Handee Marts, Inc.*, 109 Ohio App. 3d at 189; *Davies v. Globe Am. Cas. Co.*, No. 10101, 1981 WL 4103, at \*2 (Ohio Ct. App. Dist. 9 Aug. 12, 1981); *Nationwide Life Ins. Co. v. Myers*, 67 Ohio App. 2d 98, 103 (Ohio Ct. App. Dist. 9 1980). Phoenix contends, however, that "the specific articulation of a 'claim of right' by a defendant is not a precondition to the application of the voluntary payment doctrine." Def.'s Resp. 7, ECF No. 40. In support, it cites to cases applying the doctrine without mention of any claim of right and notes that Ohio case law does not define what constitutes a claim of right.

Although Defendant is correct that there is a dearth of case law on a "claim of right" in the voluntary payment context, the language used by the Ohio Supreme Court in defining the voluntary payment doctrine appears to require that a party have voluntarily paid another pursuant to a "claim of right." *See Dickman*, 151 Ohio St. at 395 ("In the absence of fraud, duress, compulsion or mistake of

fact, money, voluntarily paid by one person to another *on a claim of right to such payment*, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay.") (emphasis added). Phoenix therefore must show that Innovel made payments on a claim of right asserted by Phoenix.

Accordingly, in order to succeed on its voluntary payment defense, Phoenix must prove that: (1) Innovel voluntarily made the overpayments on a claim of right asserted by Phoenix, and (2) Innovel made the overpayments pursuant to a mistake of law.

### 1. Voluntary Overpayments on a Claim of Right

Phoenix has proven this element. It is undisputed that Innovel voluntarily overpaid its rent to Phoenix over a period of six years. Innovel made the overpayments pursuant to Phoenix's general claim that it was entitled to rent under the Lease.[3] Thus, Phoenix has shown that Innovel voluntarily made

---

[3] Although Phoenix's claim of right is made pursuant to the Lease, the Court reaffirms its earlier finding that the existence of the Lease does not preclude Innovel's equitable claim for money had and received. While the obligation to pay rent arises out of the Lease terms, the parties have not pointed to any provision in the Lease that governs overpayments. It therefore appears that Innovel cannot recover its alleged damages through a breach of contract action. *See Rorig v. Thiemann*, No. 1:105CV801, 2007 WL 2071909, at *7 (S.D. Ohio July 17, 2007) ("While it is true that Ohio permits no recovery on such theories [as unjust enrichment] where . . . an express contract cover(s) the same subject . . . , a claim for unjust enrichment only is barred when a plaintiff seeks a remedy *under the terms of the contract* and when *the subject matter of the dispute is governed by the contract.*") (internal citation and quotation marks omitted) (emphasis in original); *TLC Realty 1 LLC v. Belfor USA Grp.*, No. 3:13–cv–56, 2013 WL 6243827, at *6 (S.D. Ohio 2013) ("A valid contract does not unequivocally preclude a claim of unjust enrichment. . . . There must be something in the contract that expressly governs the conduct that is the subject of the inequitable conduct at issue before the

payments on a claim of right. In so finding, the Court declines to define Innovel's claim of right as a claim to a specific rental amount as set forth in the Lease Amendment.

## 2. Nature of Innovel's Mistake

The parties dispute whether Innovel's overpayments were the result of a mistake of law or a mistake of fact.

"A mistake of law is defined as 'a mistake of a person who knows the facts of the case but is ignorant of their legal consequence. Thus, payment made by reason of wrong construction of terms of contract is made under mistake of law.'" *Sheet Metal Workers Local 98, Pension Fund v. Whitehurst*, No. 03 CA 29, 2004 WL 77877, at *5 (Ohio Ct. App. Dist. 5 Jan. 16, 2004) (citing 69 Ohio Jurisprudence 3d (1986) 13–14, Mistake, Section 9).

"[A] mistake of fact is defined as a mistaken supposition of the existence of a specific fact." *Id*. (citing Firestone, 159 Ohio St. 423, paragraph two of the syllabus) (internal citation and quotation marks omitted); *see also, Handee Marts*, 109 Ohio App. 3d at 189 (Ohio Ct. App. Dist. 3 (1996)).

Innovel maintains that the overpayments resulted from a mistake of fact—its mistaken factual belief that its payment system was paying the correct rental amount. Phoenix maintains that the overpayments resulted from a mistake of

---

existence of the contract will be found to prevent the assertion of quasi-contractual claims for . . . unjust enrichment for that inequitable conduct.") (internal citation and quotation marks omitted).

law—Innovel's improper interpretation of the Lease Amendment.  The relevant facts are as follows.

The initial term of the Lease was ten years, with the rental rate increasing annually during the initial term.  Lease §§ 1.1(a), 1.3(b), ECF No. 34-1.  The Lease provided Innovel with four additional five-year option periods, with the rental rate increasing for each successive period.  *Id.* §§ 1.3(b), 3.0.

The Lease provided that the rental rate was $3.05 per square foot during the second option period and $3.35 per square foot during the third option period.  *Id.* § 1.3(b).

In June 2007, during the second option period, Innovel and Phoenix amended the Lease.  Lease Am., ECF No. 1-3.  The Lease Amendment accomplished two things: (1) it extended the third option period from five years to seven years, and (2) it decreased the rental rate from $3.35 per square foot to $3 per square foot, or $189,500 per month.  *Id.* ¶ 2.

Sears Holding Corporation handles lease administration on behalf of Innovel and utilizes an electronic payment system known as Facility Information and Planning System ("FIPS") for the processing of lease obligations.  Cantanese Aff. ¶ 5, ECF No. 34-1.  Innovel and Sears Holdings Corporation rely on the information inputted into FIPS for the processing and payment of lease obligations.  *Id.*

All of Innovel's potential rent obligations under the Lease, including potential obligations for each option period, were inputted into FIPS in January

1992. *Id.* ¶ 6. If FIPS is given an update that an option is exercised, then it will start paying for the option term. *See* Cantanese Dep. 51, ECF No. 32-1.

When the Lease Amendment was executed in June 2007, it was given to the property administrator assigned to the Phoenix property, Ms. Beth Turner. Cantanese Aff. ¶ 7, ECF No. 34-1. Ms. Turner was responsible for creating an abstract of the Lease Amendment. *Id.* That abstract "should have contained all material changes to the lease terms, including [Innovel's] exercise of the third option period, the extension of the third option period term, and the reduction in the rental rate for the third option period." *Id.*

Ms. Turner was then required to give the lease abstract to the lease administrator assigned to the Phoenix property, who was then responsible for entering data from the abstract into FIPS. *Id.* ¶ 8.

Ms. Turner prepared an abstract of the Lease Amendment on July 30, 2007. *Id.* ¶ 9. That abstract correctly indicated that the Lease Amendment extended the third option period and reduced the rental rate. *Id.* However, there is no record that this abstract was ever given to the lease administrator, and FIPS was never updated consistent with the abstract. *Id.* ¶ 10; Cantanese Dep. 45–47, ECF No. 32-1.

On September 7, 2007, Ms. Turner prepared a second abstract of the Lease Amendment. Cantanese Aff. ¶ 11, ECF No. 34-1. Although this second abstract correctly noted the extension of the third option period, it omitted any mention of the reduction of the rental rate. *Id.*

That same day, Ms. Turner gave the second abstract to the lease administrator assigned to the Phoenix property, who in turn updated FIPS in accordance with the abstract. *Id.* ¶ 12.

Because this second, incorrect lease abstract was used to update FIPS, Innovel made monthly rental payments at the higher rate provided for in the Lease instead of the new lower rate provided for in the Lease Amendment. *Id.* ¶ 13.

Notably, when preparing an abstract of a document, property administrators would rely on the original document itself—in this case, the Lease Amendment. Cantanese Dep. 20–21, ECF No. 32-1.

Phoenix maintains these facts demonstrate that Innovel overpaid its rent as a result of a mistake of law regarding the correct rental rate. Its argument is as follows. Ms. Turner, an agent of Innovel, had the Lease Amendment in front of her when she prepared the second lease abstract. As the Lease Amendment contained the new rental rate, Ms. Turner was aware of all of the facts necessary to determine the proper rental rate. As such, the only reasonable inference to be made from Ms. Turner's failure to include the new rental rate in the second abstract is that she erroneously interpreted the Lease Amendment. An erroneous interpretation of contract terms constitutes a mistake of law. The rental rate was inputted into FIPS pursuant to Ms. Turner's interpretation of the Lease Amendment, and FIPS issued the payments. Accordingly, Innovel's payments were made pursuant to a mistake of law.

Innovel argues that the overpayments resulted from a mistake of fact—that FIPS was making payments to Phoenix at the correct rental rate. That mistake, it argues, resulted from two human errors: (1) Ms. Turner's failure to give the first, correct lease abstract to the lease administrator, and (2) Ms. Turner's omission from the second abstract of the reduction of the rental rate. Such a mistake, Innovel argues, is akin to the clerical mistakes that courts have found to constitute mistakes of fact.

The Court finds that there exists a genuine dispute of material fact as to whether Innovel's overpayments resulted from a mistake of fact or a mistake of law. The evidence reflects, or it can be reasonably inferred from the evidence, that: (1) Ms. Turner reviewed the Lease Amendment in preparing the first abstract; (2) she identified in the first abstract the reduction in the rental rate described in the Lease Amendment; (3) she did not present the first abstract to the lease administrator; (4) she prepared a second abstract, this time omitting any mention of the reduction in the rental rate; (5) she presented the second abstract to the lease administrator; (6) the data from the second abstract was entered into FIPS; (7) and thus payments were made to Phoenix pursuant to the data contained in the second abstract.

Simply put, the evidence reflects that Ms. Turner noted the reduced rental rate pursuant to the Lease Amendment in the first abstract but not in the second. What the evidence does not reflect, however, is her reason for preparing two inconsistent abstracts. The record does not establish whether Ms. Turner first

interpreted the Lease Amendment to provide for a reduced rental rate but then interpreted it differently when she prepared the second abstract, or whether she interpreted the Lease Amendment to provide for a reduced rental rate but accidentally omitted that determination in her second abstract. The Court notes that the former scenario appears unlikely, as the terms of the Lease Agreement unambiguously state that "[t]he rent for the third extension term shall be at $3 per square foot or One Hundred Eighty Nine Thousand Five Hundred (189,500.00) per month." But the Court cannot weigh the evidence on summary judgment; that is a job for the jury.

Thus, on the one hand, viewing the evidence in the light most favorable to Phoenix and drawing all inferences in its favor, a reasonable jury could determine that Ms. Turner was aware of all of the facts regarding the rental rate, that she erroneously interpreted the Lease Amendment, and that Innovel relied on that erroneous interpretation in making its overpayments. That constitutes a mistake of law, which could preclude Innovel's recovery pursuant to the voluntary payment doctrine.[4]

On the other hand, viewing the evidence in the light most favorable to Innovel and drawing all inferences in *its* favor, a reasonable jury could find that

---

[4] Ms. Turner's knowledge of all of the facts regarding the correct rental rate is imputed to Innovel. *First. Nat. Bank of New Bremen v. Burns*, 88 Ohio St. 434, 438 (1913) ("A corporation can act only through its officers and agents, and the cases all agree on the elementary proposition that the acts of the agent within the scope of his agency are at once the acts of his principal, and obviously the knowledge of such agent in the doing of such act becomes the knowledge of his principal.").

the overpayments were the result of a clerical error, that being the automatic payment system's use of the incorrect rental rate due to either Ms. Turner's failure to give the first abstract to a lease administrator and/or her accidental omission of the reduced rental rate from the second abstract. This type of mistake is akin to clerical-like mistakes that courts have found to constitute mistakes of fact. *See Sheet Metal Workers Local 98, Pension Fund*, 2004 WL 77877, at *4–5 (finding overpayments to be the result of a mistake of fact where the overpayments were caused by the appellee's failure to delete from its computer system an instruction to send appellant the payments); *Bank One Trust Co. v. LaCour*, 131 Ohio App. 3d 48, 52–53 (Ohio Ct. App. Dist. 10 Jan. 28, 1999) (noting the existence of a mutual mistake of fact where poor internal communication between departments regarding an obligation to pay resulted in a mistaken overpayment); *Case W. Reserve Univ. v. Friedman*, 33 Ohio App. 3d 347, 348 (Ohio Ct. App. Dist. 11 Nov. 21, 1986) (finding overpayments to be the result of a mistake of fact where they were made due to a clerical error).[5]

---

[5]    If a jury found that Innovel's overpayments were made pursuant to a mistake of fact, the voluntary payment doctrine would not apply, and a reasonable jury would then have to determine if Phoenix, in equity and good conscience, is entitled to retain the money. The Court finds that a genuine issue of material fact exists as to that issue as well.

   At the time of the first overpayment, Phoenix and Innovel had a twenty year relationship that would extend for at least another seven years. Enneking Dep. 44, ECF No. 33-1. Phoenix learned that Innovel was overpaying rent a few months after Innovel began doing so. Enneking Dep. 34–35, ECF No. 33-1; Supp. Answers to Interrog., ECF No. 34-3. Instead of notifying Innovel of the overpayments, Phoenix, on the advice of counsel, elected to "sit back and wait to hear from the tenant." Enneking Dep. 36, ECF No. 33-1. Phoenix maintains, however, that at some point, it "lost track of [the] issue" until is started to evaluate the issue of renewal in 2015. Supp. Answers to Interrog.,

In sum, the Court finds that a genuine issue of material fact exists as to whether Innovel's overpayments resulted from a mistake of law or a mistake of fact.

### 3. Innovel's Negligence

Phoenix argues that even assuming the voluntary payment doctrine does not apply, Innovel's negligence in failing to discover the correct facts regarding the rental payment precludes recovery of those overpayments.

"[N]egligence is a relevant factor in determining whether it is equitable to allow recovery.'" *Firestone*, 159 Ohio St. at 434 (citation omitted). To that end, "in the absence of a change of position upon the part of the payee, the failure of one paying money to another under a mistake of fact to use ordinary care *to avoid such mistake* will not defeat his right to recover it back . . . ." *Id*. at 433 (emphasis added). Moreover,

> [n]egligence of the payer in *failing to discover* the facts will not prevent recovery where the payment is actually made under mistake of fact, and the mere failure of the payer to avail himself of means of knowledge will not preclude his recovery unless it appears that he intended to waive inquiry into the facts, was under a legal duty to ascertain them or is by law presumed to have knowledge of them.

*Id*. at 423 (emphasis added).

Phoenix first argues that Innovel's quality assurance procedures with respect to lease abstracts were either "negligently performed in that it did not ensure that the proper rate was input into FIPS, or it wasn't [sic] done at all and

---

ECF No. 34-3. Whether Phoenix would be entitled to retain the money is therefore a question for the jury.

instead Ms. Turner was left entirely up to her own efforts, devices and whims in determining what Sears would be paying over a seven year span – which is likewise negligent." Def.'s Resp. 12, ECF No. 40. It emphasizes that Innovel did not at any time between 2007 and 2014 conduct any quality control to ensure that the information entered into FIPS accurately reflected the terms of the Lease. Cantanese Dep. 52–53, ECF No. 32-1. It also points out that Innovel has no explanation as to why the first abstract was not entered into FIPS. *Id*. at 46. Absent any evidence of Phoenix's change in position due to the overpayments, however, any failure on behalf of Innovel to take measures to avoid its mistake of fact does not preclude Innovel's recovery. *See Firestone*, 159 Ohio St. at 433.

With respect to Innovel's failure to discover the mistake, Phoenix argues that Innovel waived its inquiry into the facts regarding whether Innovel was paying the correct rental amount by going seventy-two months without any effort to determine whether the data entered into FIPS was correct. Phoenix fails to establish, however, that Innovel *intended* to waive its inquiry. *See id*. at 423.

Phoenix also argues that Innovel was presumed to have knowledge of the correct rental rate because its employees, specifically Ms. Turner and the senior vice president, had such knowledge. As such, Phoenix argues, Innovel is responsible for its negligence in failing to enter the updated rate into FIPS. In other words, Phoenix appears to argue that Innovel is presumed to have known that FIPS was paying the wrong rental amount because it is presumed to have known the correct rental amount. But while Innovel may be presumed by law to

have knowledge of the correct rental rate through the knowledge of its officers and agents, it is not presumed by law to have knowledge of the fact that FIPS was not issuing payments at the correct rental rate.

In sum, there exist genuine issues of material fact regarding whether Innovel's recovery is barred by the voluntary payment doctrine. Accordingly, summary judgment is improper for either party.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Innovel's motion for summary judgment, ECF No. 34, and **DENIES** Phoenix's motion for summary judgment, ECF No. 35.

The Court will hold a telephone status conference on **Wednesday, August 24, 2016 at 2:00 p.m.** The parties shall be prepared to discuss a trial date and the possibility of mediation.

IT IS SO ORDERED.

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**